1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA , | CASE NO. 12CR1073 WQH |
| Plaintiff, | ORDER |
| vs. | |
| STEVE RUBY (1), | |
| Defendant. | |

HAYES, Judge:

      The matters before the Court are the motions (ECF Nos. 71-1 through 71-10) filed by the Defendant Steve Ruby.

## BACKGROUND

      The investigation in this case involved a series of bank robberies which took place from January 17, 2012 through February 28, 2012.  During the investigation, police officers put out a "be on the look out" (BOLO) bulletin to county law enforcement to look for a maroon/burgundy Chevrolet Silverado.  On March 1, 2012, a San Diego Sheriff's Department Detective conducting an unrelated investigation observed a truck matching the BOLO description.  Further investigation produced a licence plate number for the truck which was registered to Spiros Romensas and information that Spiros Romensas and Steve Ruby had storage lockers at the A-American Storage facility in El Cajon.

      On March 8, 2012, at approximately 1:30 p.m., Defendant Steve Ruby and Defendant Spiros Romensas were arrested.

On March 8, 2012, at 1:30 p.m., the Government sought and received a warrant authorizing the search of Defendant Ruby's hotel room and storage unit.

On March 21, 2012, the grand jury returned an indictment charging Defendant Steve Ruby with six counts of bank robbery and one count of attempted bank robbery in violation of 18 U.S.C. § 2113(a).

On March 29, 2012, the Government sought and received an order directing Defendant Ruby's cell phone service provider "to disclose the records of cell site and cell storage activations by the subject telephones during the period January 1, 2012 to March 31, 2012." (ECF No. 71-2 at 17).

Agents of the Federal Bureau of Investigations (FBI) showed a photographic lineup which included a photo of Defendant Ruby to a bank teller witness on each of the following dates: April 17, 2012; July 27, 2012; July 31, 2012; August 1, 2012; and August 24, 2012. Each of the five bank tellers identified Defendant Ruby as the robber.

On May 16, 2012, the grand jury returned a superseding indictment charging the following counts:

> Count 1: On or about January 17, 2012, within the Southern District of California, defendant STEVE RUBY, by force, violence, and by intimidation, did unlawfully take from the person and presence of employees of Pacific Western Bank, located at 9955 Mission Gorge Road, Santee, California, the sum of approximately $516.00, belonging to and in the care, custody, control, management, and possession of Pacific Western Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation (FDIC); in violation of Title 18, United States Code, Section 2113(a).

> Count 2: On or about January 23, 2012, within the Southern District of California, defendant STEVE RUBY, by force, violence, and by intimidation, did unlawfully take from the person and presence of employees of Pacific Western Bank, located at 9955 Mission Gorge Road, Santee, California, the sum of approximately $2,587.00, belonging to and in the care, custody, control, management, and possession of Pacific Western Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation (FDIC); in violation of Title 18, United States Code, Section 2113(a).

> Count 3: On or about February 6, 2012, within the Southern District of California, defendant STEVE RUBY, by force, violence, and by intimidation, did unlawfully take from the person and presence of employees of Home Bank of California, located at 875 Garnet Avenue, San Diego, California, the sum of approximately $607.00, belonging to and in the care, custody, control, management, and possession of Home Bank of California, the deposits of which were then insured by the Federal Deposit Insurance Corporation (FDIC); in violation of Title 18, United States Code, Section 2113(a).

Count 4: On or about February 10, 2012, within the Southern District of California, defendant STEVE RUBY, by force, violence, and by intimidation, did unlawfully take from the person and presence of employees of Pacific Western Bank, located at 9643 Mission Gorge Road, Santee, California, the sum of approximately $ 1,211.00, belonging to and in the care, custody, control, management, and possession of Pacific Western Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation (FDIC); in violation of Title 18, United States Code, Section 2113(a).

Count 5: On or about February 14, 2012, within the Southern District of California, defendant STEVE RUBY, by force, violence, and by intimidation, did unlawfully attempt to take from the person and presence of employees of Pacific Western Bank, located at 9955 Mission Gorge Road, Santee, California, money belonging to and in the care, custody, control, management, and possession of Pacific Western Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation (FDIC); in violation of Title 18, United States Code, Section 2113(a).

Count 6: On or about February 21, 2012, within the Southern District of California, defendants STEVE RUBY and SPIROS ROMENSAS, by force, violence, and by intimidation, did unlawfully take from the person and presence of employees of Pacific Western Bank, located at 368 Broadway, El Cajon, California, the sum of approximately $1,432.00, belonging to and in the care, custody, control, management, and possession of Pacific Western Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation (FDIC); in violation of Title 18, United States Code, Section 2113(a) and Title 18, United States Code, Section 2.

Count 7: On or about February 28, 2012, within the Southern District of California, defendants STEVE RUBY and SPIROS ROMENSAS, by force, violence, and by intimidation, did unlawfully take from the person and presence of employees of Wells Fargo Bank, located at 6670 Montezuma Road, San Diego, California, the sum of approximately $9,903.00, belonging to and in the care, custody, control, management, and possession of Wells Fargo Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation (FDIC); in violation of Title 18, United States Code, Section 2113(a) and Title 18, United States Code, Section 2.

(ECF No. 26).

On July 3, 2012, the government sought and received a search warrant to search Defendant Ruby's cell phone which had been seized at the time of his arrest.

## RULINGS OF THE COURT

**Motion #1 to dismiss for lack of jurisdiction**

Defendant Ruby moves to dismiss the superseding indictment on the grounds that the Congress exceeded its Commerce Clause authority in promulgating the federal bank robbery statute, 18 U.S.C. Section 2113(a).

In *United States v. Harris*, 108 F.3d 1107, 1108 (9th Cir. 1997), the Court of Appeals

for the Ninth Circuit stated: "[f]ederal courts have jurisdiction over a bank robbery offense where the bank was a federally insured institution." The Court of Appeals explained "[t]hese federal institutions are instrumentalities and channels of interstate commerce and their regulation is well within Congress's Commerce Clause power." *Id.* at 1109.

Defendant's motion #1 to dismiss the indictment for lack of jurisdiction is denied.

**Motion #2 to dismiss for failure to state an offense**

Defendant contends that Count 5 of the indictment in this case fails to allege that he did something that was a substantial step toward robbing the bank. The Government contends that the allegations of time and place in the superseding indictment satisfy the notice requirements of an indictment.

Count 5 alleges that Defendant Ruby attempted to rob the Pacific Western Bank at 9955 Mission Gorge Road in Santee, California on February 14, 2012. The Court concludes that the indictment allegation of an attempt carries with it an implied allegation of an overt act in furtherance of the offense charged and satisfies the requirement of Federal Rule of Criminal Procedure 7(c)(1). *See United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007).

Defendant's motion #2 to dismiss Count 5 is denied.

**Motion #3 to sever trials of the seven counts**

Defendant contends that the six counts of bank robbery and one count of attempted bank robbery in this case are not properly joined under Rule 8 of the Federal Rules of Criminal Procedure. The Government contends that the similarities of the crimes charged in the indictment satisfy the requirements for joinder.

Under Rule 8(a), joinder of offenses is permitted if the offenses "are of the same or similar character, or are based upon the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim P. 8(a). In this case, the temporal proximity of the acts, the physical location of the acts, and the identity of the victims adequately set forth acts of the same or similar character properly joined under Rule 8(a).

Defendant's motion #3 to sever trials of the seven counts is denied.

**Motion #4 to suppress 2703(D) evidence obtained pursuant to court order**

On March 29, 2012, the United States of America applied to the district court for an order directing Leap Wireless, an electronic communication service provider, to provide to the Federal Bureau of Investigations subscriber and other historical information regarding three identified telephone numbers. The Application stated: "These cellular telephone numbers are believed to have been used by Steve RUBY, Spiros ROMENSAS, and Sharon STRAKA, respectively, within the Southern District of California." (ECF No. 71-2 at 9). The information in support of the application by the Assistant United States Attorney stated that the "FBI is conducting a criminal investigation into the users and/or subscribers of cellular telephone numbers ... which may constitute violations of Title 18, United States Code, Section 2113(a)- Bank Robbery." *Id.* at 10. The Assistant United States Attorney set forth specific information regarding six bank robberies and one attempted bank robbery which occurred from January 17, 2012 through February 28, 2012; specific information linking Steve Ruby, Spiros Romensas, and Sharon Straka to the robberies; and specific information linking the phone numbers to Steve Ruby, Spiros Romensas, and Sharon Straka. The Application requested "records of cell site and cell sector activations by the subject telephones during the period January 1, 2012 to March 31, 2012." *Id.* at 17.

The Magistrate Judge found that "the applicant has set forth specific and articulable facts showing that there are reasonable grounds to believe that the records and information sought are relevant and material to a criminal investigation being conducted by the Federal Bureau of Investigation ('the FBI') regarding possible violations of Title 18, United States Code, Section 2113A- Bank Robbery, by the subscriber or other users of the subject telephones for which service is provided...." *Id.* at 19-20. The Magistrate Judge ordered that the service provider shall disclose to the FBI subscriber information for the subject telephones and "all records of cell site and cell sector activations by the subject telephones during the period January 1, 2012 to March 31, 2012." *Id*. at 20.

Defendant contends that the Government violated his rights under the Fourth Amendment by tracking his movements without obtaining a warrant supported by probable cause determined by a magistrate. Defendant asserts that the Government was able to track

his movements by receiving cell site and cell sector data under the Stored Communication Act. Defendant contends that the collections of cell site tracking information to monitor a person's location is distinctly more invasive and revealing than mere visual surveillance. Defendant contends that the prolonged tracking of an individual based upon historic cell site information implicates the Fourth Amendment and required a showing of probable cause.

The Government contends that the application to obtain historical, cell-site records from a telephone provider set forth more than an adequate showing of reasonable grounds to believe that the records were relevant and material to an ongoing criminal investigation. The Government contends that the historical cell-site records are business records of the provider and obtaining these records is substantially less intrusive than obtaining the contents of communications. The Government contends that the order of the Magistrate Judge was lawful, that no search occurred in the production of historical cell-site records, and no warrant was required. The Government further contends that suppression would not be a proper remedy in this case, even if a warrant was required, in light of the objectively reasonable reliance by law enforcement on the order of the Magistrate Judge.

Section 2703(c) of the Stored Communications Act addresses "[r]ecords concerning electronic communication service or remote computing service." 18 U.S.C. § 2703(c). The statute states that "[a] governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity ... obtains a court order for such disclosure under subsection (d) of this section." *Id*. § 2703(c)(1)(B). A court order under Section 2703(d) order "may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." *Id*. § 2703(d).

Section 2703(c)(1)(B) of the Stored Communications Act applies to the historical cell

site location data ordered by the court in this case.  *See, e.g., In re Application of the United States*, 620 F.3d 304, 313 (3d Cir. 2010) (holding that historical cell site location information is "obtainable under at § 2703(d) order"); *United States v. Graham*, 846 F.Supp.2d 384, 396 (D. Md. 2011); and *In re Application of the United States*, 509 F.Supp.2d 76, 79–80 (D. Mass. 2007).   The Application in this case contained "specific and articulable facts showing that there are reasonable grounds to believe that the records sought are relevant and material to an ongoing criminal investigation."  18 U.S.C. § 2703(d).  The Act permitted the Government to obtain a court order to produce the historical cell site location data at issue.  Judicial review under the Stored Communication Act was required and obtained by the Government in this case.

Defendant contends that the order pursuant to the Stored Communication Act for the period January 1, 2012 to March 31, 2012 violated his Fourth Amendment rights.  Defendant contends that the prolonged tracking of an individual based upon historic cell site information implicates the Fourth Amendment and required a showing of probable cause. The Government contends that business records of the cell phone provider were lawfully acquired by the Government and that there was no violation of the Defendant's  Fourth Amendment rights.

In order to determine whether  a Fourth Amendment search has occurred, the Court must examine whether "the individual manifested a subjective expectation of privacy" in the place or item searched, and "society [is] willing to recognize that expectation as reasonable." *Kyllo v. United States,* 533 U.S. 27, 33 (2001) (internal citations omitted).  In *United States v. Miller*, 425 U.S. 435 (1976), the United States Supreme Court found "no intrusion into any area in which respondent had a protected Fourth Amendment interest" where copies of respondent's bank records were provided by the banks pursuant to a subpoena. *Id.* at 440. The Supreme Court concluded that the documents were not the respondent's "private papers" and that the documents were "business records of the bank." *Id.*  The Supreme Court stated: "We must examine the nature of the particular documents sought to be protected in order to determine whether there is a legitimate 'expectation of privacy' concerning their contents." *Id.* at 442.  The Supreme Court concluded:

> The checks are not confidential communications but negotiable instruments to be used in commercial transactions. All of the documents obtained, including the financial statements and deposit slips, contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business.

*Id*. The Supreme Court concluded: "This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Id*. at 443.

In *Smith v. Maryland*, 442 U.S. 735 (1979), the Supreme Court concluded that a pen register installed on telephone company property to record the telephone numbers dialed by the petitioner did not constitute a search within the meaning of the Fourth Amendment. The Supreme Court concluded that the petitioner did not have a "reasonable expectation of privacy" regarding the number he dialed on his phone. The Supreme Court stated: "we doubt that people in general entertain any actual expectation of privacy in the numbers they dial." *Id*. at 742. The Supreme Court added: "[E]ven if petitioner did harbor some subjective expectation that the phone numbers he dialed would remain private, this expectation is not 'one that society is prepared to recognize as 'reasonable.'" (citation omitted). *Id*. at 743. The Supreme Court concluded: "This Court has consistently held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Id*. at 743-44. The Court concluded:

> This analysis dictates that petitioner can claim no legitimate expectation of privacy here. When he used his phone, petitioner voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business. In so doing, petitioner assumed the risk that the company would reveal to police the numbers he dialed.

442 U.S. at 744.

The historical cell site location records obtained by the Government in this case, created and maintained by the cellular provider, reveal which cellular towers were used to route a particular call. This information can reveal the general vicinity in which a cellular phone was used. Congress has authorized such records to be provided to law enforcement when the

Magistrate Judge finds "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Those requirements were met in this case.[1]

The historical cell site location records are the business records of the provider and not entitled to protection under the Fourth Amendment. *See United States v. Miller*, 425 U.S. at 443. Defendant in this case voluntarily conveyed information to a third party cellular phone provider. The third party cellular phone provider maintained records. The Court concludes that the Defendant does not have a reasonable expectation of privacy in the third party business records created and maintained by a cellular phone provider derived from information voluntarily conveyed to the cellular telephone provider. The period of time for which the records in this case were requested was directly connected to the period of criminal activity under investigation. The bank robberies under investigation began on January 17, 2012 and continued through February 28, 2012. Defendant Ruby was arrested March 8, 2012. The request for historical cell tower location information for the period January 1, 2012 though March 31, 2012 was based upon reasonable grounds to believe that the records were relevant and material to the criminal investigation of this specific course of conduct. The Court concludes that the Defendant's Fourth Amendment rights were not violated when the Government acquired historical cell site location data pursuant to an Order of a Magistrate Judge of this Court according to the standards of the Stored Communications Act for a specific period of time directly related to the criminal activity under investigation.

Defendant's motion #4 to suppress evidence obtained from court order is denied.

**Motion #5 to suppress evidence from phone search warrant**

Defendant moves the Court for an order to suppress evidence from the search of his cell phone pursuant to a warrant on the grounds that the application for the warrant lacked specificity and the application relied upon evidence seized in violation of the Fourth

---

[1]The Government argued at the hearing and the Court agrees that the 2703(d) application was so detailed that the information provided would satisfy a showing of probable cause.

1    Amendment.   The Government asserts that the search warrant for the cell phone was

2    reasonable in scope and that the facts in the affidavit provided probable cause to believe that

3    the Defendant's cell phone was used as an instrumentality of the crimes alleged.

4         "To satisfy the demands of the Warrant clause, a warrant must comply with two related

5    but distinct rules.  First, it must describe the place to be searched or things to be seized with

6    sufficient particularity, taking account of the circumstances of the case and the type of items

7    involved.  Second, it must be no broader than the probable cause on which it is based.  The

8    particularity rule and the probable cause rule serve a common purpose: to protect privacy by

9    prohibiting a general, exploratory rummaging in a person's belongings." *United States v. Kow*,

10   58 F.3d 423, 426-28 (9th Cir. 1995).

11        On July 3, 2012, the Government sought and received a search warrant for two cellular

12   telephones impounded and held in the custody of the FBI.  (ECF No. 71-2 at 22-40).  The

13   Magistrate Judge reasonably determined that there was probable cause to search the two

14   cellular phones.  The affidavit in support of the search warrant informed the Magistrate Judge

15   that witnesses had seen the robber flee the robbery scene during the first, fifth and sixth

16   robberies and the attempted bank robbery by getting into the passenger seat of a maroon pick-

17   up truck or had seen the robber getting into a maroon pick-up truck just prior to the crime.  The

18   affidavit informed the Magistrate Judge that subsequent investigation led to a burgundy-

19   colored, Chevrolet Silverado pick-up truck associated with Defendant Romensas and two

20   storage units at A-American Storage associated with Defendant Romensas and Defendant

21   Ruby.

22        The affidavit informed the Magistrate Judge that Defendant Ruby and Defendant

23   Romensas were placed under arrest on March 8, 2012 in possession of the two cellular

24   telephones; and that historical cell records provided to the Government by court order showed

25   that these cellular telephones were using a cell site within a few miles of the bank robberies

26   which took place on January 23, 2012; February 6, 2012; February 21, 2012; and February 28,

27   2012.  Based upon the facts, the Magistrate Judge reasonably found probable cause to search

28   the two cellular telephones for evidence of the bank robberies.  The Court finds that the search

1    warrant was reasonable in scope and supported by facts to show probable cause to believe that

2    Defendant Ruby and Defendant Romensas were involved in a series of coordinated crimes in

3    different locations and were using their phones to communicate in furtherance of their crimes.

4         Defendant's motion #5 to suppress evidence from phone search warrants is denied.[2]

5    **Motion #6 to suppress evidence from hotel and storage unit search warrants**

6         Defendant Ruby asserts that the search warrant is not supported by probable cause to

7    believe that evidence of the bank robberies would be found in the hotel room or the storage

8    locker.  The Government asserts that the Magistrate Judge correctly determined that there was

9    probable cause to believe that evidence of the serial bank robberies detailed in the affidavit

10   would be found in Ruby's storage unit and his hotel room.

11        A Magistrate Judge is required to answer the "commonsense, practical question whether

12   there is probable cause to believe that contraband or evidence is located in the particular place

13   before issuing a search warrant." *Illinois v. Gates*, 462 U.S. 213, 230 (1983).  Probable cause

14   means nothing more than a "fair probability" that contraband or evidence is located in a

15   particular place. *Id.* at 246.  The Magistrate Judge in this case reasonably determined that there

16   was probable cause to believe that evidence of serial bank robberies would be found within the

17   Defendant's hotel room and storage unit.

18        Defendant's motion #6 to suppress evidence from hotel and storage unit search warrants

19   is denied.[3]

20   **Ruby's motion #8 to suppress identification testimony**

21        Defendant Ruby contends that the out-of-court identifications in this case were so

22   unduly suggestive that all identification testimony should be suppressed.  Defendant contends

23   that the photographic line-ups presented to the tellers were implicitly suggestive on the grounds

24   _____

25        [2]To the extent that Defendant Romensas moved to joined in the motion of Defendant Ruby,
26   any motion to suppress the evidence obtained from Defendant Romensas' cell phone is denied. (ECF
     No. 74).

27        [3]To the extent that Defendant Romensas moved to joined in the motion of Defendant Ruby,
28   any motion to suppress the evidence obtained from Defendant Romensas' storage shed and his
     residence is denied. (ECF No. 74).

that 1) the identifications were not conducted until July and August 2012, months after the Defendant's arrest; 2) the administrators of the six-pack line-up knew the Defendant's photograph was present in the array; and 3) contemporaneous statements of witness confidence with respect to any identification were not taken.  Most importantly, Defendant contends that his photo unduly stood out in the six-pack photo array.  Defendant explains that "most of the tellers described the robber as having a 'scruffy beard' and that he stood out in the line up because "three of the fillers have no facial hair at all and of the two remaining one has a gray, well-groomed goatee and the other a well-groomed, brown mustache." (ECF No. 71-1 at 29).

The Government contends that the Defendant has not shown that the photo procedures in this case were impermissibly suggestive.  The Government asserts that the six-pack photographic line-up which included Defendant Ruby depicted "Caucasian males in the same age range, and all of them were bald or balding with similar head shapes and ears, and all had similar skin and eye coloring."  (ECF No. 76 at 29).  The Government submits that the San Diego County Sheriff's Department Photo Line-up Admonishment signed and dated by each potential witness and asserts that there were no inappropriate directive actions in this case.

"Suggestive pretrial identification procedures may be so impermissibly suggestive as to taint subsequent in-court identifications and thereby deny a defendant due process of law." *United States v. Bagley*, 772 F.2d 482, 492 (9th Cir. 1985).  "Suggestive confrontations are disapproved because they increase the likelihood of misidentification...." *Neil v. Biggers*, 409 U.S. 188, 198 (1972).  "[E]ach case must be considered on its own facts, and []convictions based on eye witness identification at trial following a pretrial identification by photograph will be set aside [] only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* at 196-97 (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)).

Courts employ a two-step analysis to determine the admissibility of identification testimony. *United States v. Love*, 746 F.2d 477 (9th Cir. 1984).  "First, it must be determined whether the procedures used were impermissibly suggestive.  If so, it must then be determined whether the identification was nonetheless reliable." *Id.* at 478.  Defendant bears the burden

of proving that the identification procedure was impermissibly suggestive. *See Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995).

The record in this case establishes that the six bank robberies and one attempted bank robbery charged in the indictment took place from January 17, 2012 through February 28, 2012. Defendant was arrested on March 8, 2012. The record establishes that five potential witnesses[4] were shown a photographic line-up by agents of the FBI on the following dates: April 17, 2012; July 27, 2012; July 31, 2012; August 1, 2012; and August 24, 2012. Each potential witness was a victim teller during one of the robberies under investigation. Each potential witness was initially read aloud and asked to acknowledge the San Diego County Sheriff's Department Photo Line-Up Admonishment form which stated:

> In a moment I am going to show you a group of photographs. This group of photographs may or may not contain a picture of the person who committed the crime now being investigated. The fact that the photographs are shown to you should not influence your judgment. You should not conclude or guess that the photographs contain the picture of the person who committed the crime. The fact that photos are being shown to you should not cause you to believe or guess that a guilty person has been caught. You are not obliged to identify anyone. It is just as important to free innocent persons from suspicion as to identify guilty parties. Please do not discuss this case with other persons, nor indicate in any way you have identified someone.
>
> Please keep in mind that hairstyles, beards, and mustaches are easily changed. Also, photographs do not always depict the true complexion of a person; it may be lighter or darker than shown in the photo.
>
> You should pay no attention to any markings or numbers that appear on the photos. Also, pay no attention to whether the photos are in color, or in black and white, or any other difference in the type or style of photographs. You should study only the person shown in each photograph.
>
> Please do not talk to anyone other than Sheriff's deputies while viewing the photos. You must make up your own mind and not be influenced by other witnesses, if any.
>
> When you have completed viewing all the photos, please tell me whether or not you can make an identification. If you can, tell me in your own words how sure you are of your identification. Please do not indicate in anyway to other witnesses that you have or have not made an identification.
>
> Thank you.

[4]One individual was the victim teller during two robberies (January 17, 2012 and January 23, 2012) and present at the alleged attempted robbery on February 14, 2012.

(ECF No. 76-1 at 4, 9, 13, 17 and 22). Each witness was shown the surveillance photograph of the bank robbery on the date the witness was present at the robbery to refresh recollection. The witness was then shown the photographic line-up generated by the FBI utilizing the San Diego County E-Mugs database. Defendant Ruby was placed in the #3 position of the line-up.

The photo line-up (ECF No. 71-2 at 80) depicted six Caucasian males in the same age range. All of the males depicted were bald or balding with similar head shapes and ears, similar skin and eye coloring. Three of the men had light color facial hair, including Defendant Ruby. Three did not have facial hair. None of the photos were distinctively colored or hazy.

Each witness reviewed the photographic line-up and identified #3 as the bank robber. Each witness indicated to the agent how sure she or he was of the identification. ("Looks to me like 3. I'd say #3 to me." (ECF No. 76-1 at 2); "I remember that face." (ECF No. 76-1 at 8); "What I think the face is compared to the real one, that's the person." (ECF No. 76-1 at 12); "commented she remembered the robber had a beard, and identified photograph #3 as the robber" (ECF No. 76-1 at 16); "commented that the individuals looked alike, but identified photograph #3 as the robber" (ECF No. 76-1 at 20)). Each witness then circled photo #3 on the line-up, and signed and dated the line-up and the admonishment form.

The Court concludes that there are no facts to suggest that the photo array or the identification procedures used in this case were improperly suggestive. The photographs in the array are similar in appearance. The individuals are of the same race and similar age. The individuals are bald or balding, with the same skin color, and eye color. The photograph of Defendant Ruby does not unduly stand out in the photo array on the basis of facial hair or any other characteristic. There are no differences between the Defendant's photograph and the other photographs that create a suggestion that the Defendant is the offender. *See United States v. Burdeau*, 168 F.3d 352, 357-58 (9th Cir. 1999) (array not impermissibly suggestive when defendant's photograph was placed in the center of the array, was darker than the rest and was the only one in which the eyes were closed); *United States v. Carbajal,* 956 F.2d 924, 929 (9th Cir. 1992) (array not impermissibly suggestive when defendant's photograph was

only one in which individual wore wig and had bruises on face); and *United States v. Johnson*, 820 F.2d 1065, 1073 (9th Cir. 1987) (array not impermissibly suggestive when defendant's photograph was hazier than others).

Each potential witness was told that the photo array may not contain a picture of the person who committed the crime now being investigated and that they were not obligated to identify anyone. Each potential witness was told : "Keep in mind that hairstyles, beards, and mustaches are easily changed." (ECF No. 76-1 at 4, 9, 13, 17, 22). Each potential witness identified photo #3 and contemporaneously made a statement of confidence. The Court concludes that Defendant has failed to come forward with any facts to suggest that any aspect of the identification procedure was impermissibly suggestive. The Court has reviewed the Report of Roy S. Malpass (ECF No. 94) and finds that expert testimony is not helpful to the Court or required at this stage in the proceedings. There are no facts in dispute to examine at an evidentiary hearing.

Defendant's motion #8 to suppress identification testimony is denied.

## CONCLUSION

IT IS HEREBY ORDERED that 1) Defendant's motion (ECF No. 71-1) to dismiss the indictment for lack of jurisdiction is denied; 2) Defendant's motion (ECF No. 71-2) to dismiss Count 5 is denied; 3) Defendant's motion (ECF No. 71-3) to sever trials of the seven counts is denied; 4) Defendant's motion (ECF No. 71- 4) to suppress evidence obtained from court order is denied; 5) Defendant's motion (ECF No. 71-5) to suppress evidence from phone search warrants is denied; 6) Defendant's motion (ECF No. 71-6) to suppress evidence from hotel and storage unit search warrants is denied; and 7) Defendant's motion (ECF No. 71-8) to suppress identification testimony is denied.

DATED: February 12, 2013

**WILLIAM Q. HAYES**
United States District Judge